UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR BATSON,

              Plaintiff,                                Case Number 17-12214

v.                                                    Honorable David M. Lawson

GENESEE COUNTY SHERIFF'S DEPUTY
HOOVER, LT. LEONA BROECKER, SGT.
KENNAMER, DEPUTY LEONOWICZ,
and GENESEE COUNTY,

              Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Omar Batson alleges in an amended complaint that he was abused by his jailors at the Genessee County, Michigan jail while he was serving a misdemeanor sentence. The defendants have filed several motions for summary judgment alleging that the discovery has not borne out the claims against any of the individual defendants, the individual defendants are entitled to qualified immunity, and the plaintiff has not identified any illegal policy that would subject Genesee County to municipal liability. Fact questions preclude summary judgment as to defendants Kennamer and Leonowicz, but the plaintiff has not offered evidence that creates a triable issue as to the other defendants. Therefore, the Curt will grant in part and deny in part the motions for summary judgment.

### I. Facts

In June 2014, Batson was convicted of misdemeanor reckless driving and drunken driving and sentenced to 45 days in the Genesee County Jail. He was due to be released on July 11, 2014. Batson alleges that he was abused in various ways during his jail stay including incidents when he was sprayed in the genitals with mace; denied prescribed medication; and, on the day when he

should have been released, handcuffed and then again pepper sprayed and beaten after he was cuffed, despite offering no resistance or provocation. The parties' accounts of that last incident differ substantially and are discussed in more detail below.

Booking records from the jail show that when he was taken into custody, Batson indicated that he was taking Keppra and Lamictal for a seizure disorder for which he recently had been hospitalized. On June 6, 2014, orders were entered in his jail medical record that he was to receive doses of Keppra and Lamictal twice a day for 30 days. However, Batson submitted copies of several medical "kites" (a colloquialism for a written communication by a prisoner making a request or expressing a complaint, *see Itrich v. Ricumstrict*, No. 17-12495, 2018 WL 4140708, at *1 (E.D. Mich. Aug. 30, 2018)), that he sent to jail authorities in early July 2014 complaining that the had received only Keppra and had not been given Lamictal, and he had seizures as a result.

Batson testified at his deposition that when he was seen by a doctor (unnamed) at the jail, the doctor was upset about him not getting all his medication and "went straight to the nurse" (also unnamed), directing her to give Batson his medication, which was done within an hour. He attested that on another occasion he told a jail nurse (again, unnamed) that he needed his medication because he had just had a seizure and probably would have another one soon. But the nurse just "started laughing and [said] I [will] get it when I get a chance to and . . . go back to your bunk." He also testified that one time he had a seizure in his cell, which jail staff were aware of because he was making noise and his cellmate "was screaming, he's dying, he's dying [but] they wouldn't even come." Finally, Batson testified that he had a seizure on another occasion while confined in "the box," after (unnamed) jail officers "sprayed [his] testicles with mace."

Batson testified that when he believed he was supposed to be released, he went up to the desk in the jail area where a deputy sat, with others who had been called for release. Batson stated

that he was not yelling at the deputy and never "shoved" anything at the deputy. The deputy told Batson to get away from his desk, and Batson then walked away. The deputy then told Batson to put his box of belongings on the floor and called out "Code Green" (the verbal code indicating that an officer requires assistance). A female officer then arrived and placed handcuffs on Batson. Other guards also soon arrived and started talking to the deputy at the desk, asking "What's going on?" When Batson replied, "I didn't do anything," one of the officers told him to "shut up" and then sprayed mace in his eyes and face. Batson then was taken to another area of the jail, but on the way two guards with him banged his chest, shoulders, and head into doors and walls as he was being transported.

Batson had some difficulty identifying the defendants in person or by photographs presented at his deposition and saying what roles they took in the incident. The most he could say about Lieutenant Broecker was that she resembled the female officer who put handcuffs on him during the Code Green incident. He could not definitely recall Sergeant Kennamer, except to say that he thought Kennamer was "very mean" to him. Batson also stated that he was blinded by the OC spray — the "mace" — and consequently could not clearly see who beat him. Batson also conceded that he had "no idea" if any of the individual defendants were involved in denying him the medication that he was supposed to receive.

Deputy David Hoover attested that during the incident, he stood up, told Batson to back away from the desk, drew and pointed his Taser weapon when Batson did not comply, and then called the Code Green. Hoover stated that after he signaled the Code Green, the other officers arrived in about a minute, then Hoover sat back down at his desk.

Deputy Nicolas Leonowicz testified that he responded to the Code Green and that during the incident he used a "one-second burst" of OC spray to subdue Mr. Batson. In his incident report,

Leonowicz wrote that he used the OC spray because Batson refused to follow verbal commands, was "talking loudly," and "turned quickly toward" Leonowicz. After Batson was sprayed, Leonowicz escorted him to the Restricted Housing Unit (RHU), where he offered Batson a shower to remove the OC residue.

Sergeant (now Lieutenant) David Kennamer testified that he was present during the "Code Green" response and arrived after Deputy Leonowicz. Kennamer saw Leonowicz use OC spray on Batson, which according to Kennamer occurred after Batson disobeyed direct verbal commands. Kennamer said that Batson was handcuffed after he was sprayed, and then taken by Leonowicz and Kennamer to the RHU.

The plaintiff filed his complaint in this case on July 6, 2017. Initially he named more than 80 individuals whom he identified, apparently, from the employee roster of the Genesee County Sheriff Department, although it is undisputed that no more than three or possibly four persons were involved in the principal incidents alleged in the complaint. On December 18, 2017, the plaintiff filed an amended complaint that dropped all but four of the named individuals and added Genesee County as a defendant. The case was reassigned to the undersigned on July 3, 2018. On September 5, 2018, after a conference with the parties, the Court entered an order dismissing the complaint as to all but the remaining four individually named defendants and the County. The present defendants are Sergeant David Kennamer, Deputy Nicolas Leonowicz, Lieutenant Leona Broecker, and Deputy David Hoover (named only as "Deputy Hoover" in the pleadings).

The amended complaint pleads claims via 42 U.S.C. § 1983 for (1) individual and supervisory liability for denial of necessary medical care and excessive force under the Eighth Amendment ("First Claim for Relief"); (2) congruent deprivations of the plaintiff's rights under the Fourteenth Amendment, purportedly due to his status as a pretrial detainee ("Fourth Claim for

Relief"); and an inscrutable claim for "Res Ipsa Loquitur" ("Fifth Claim for Relief"). The plaintiff's "Third Claim for Relief," embodying certain state law claims, was dismissed by the parties' stipulation on August 16, 2018. ECF No. 57. No mention is made in the amended complaint of the mysteriously omitted "Second Claim for Relief," which also conspicuously was absent from the original complaint.

The defendants filed a "motion to amend or correct" the caption to excise David Hoover as a party, which will be adjudicated as a motion for partial summary judgment. In that motion, Hoover argues that he never was served with the summons, despite the fact that counsel for the County agreed to accept service on behalf of another deputy also named Hoover. Hoover filed a second motion for summary judgment, in which he argues along with the other individual defendants that the claims should be dismissed based on qualified immunity. The County also argued that the plaintiff has not offered evidence to support a claim for municipal liability.

## II. Discussion

The defendants moved for summary judgment under Federal Rule of Civil Procedure 56(a). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To oppose that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted)). The opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The submitted materials need not themselves be in a form that is admissible in evidence. *Celotex*, 477 U.S. at 324.

"The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

A. Deliberate Indifference

The plaintiff brings his claims under 42 U.S.C. § 1983. That statute imposes civil liability upon persons acting under color of state law who deprive a citizen of rights guaranteed by the Constitution and federal laws. To survive a summary judgment challenge, a plaintiff must offer evidence establishing "(1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

The plaintiff argues that the deprivation of his antiseizure medication violated his right under the Eighth Amendment to be free from cruel and unusual punishment. "'[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). "An Eighth Amendment claim on these grounds is comprised of an objective and a subjective component." *Id.* at 937-38. "Thus, 'a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.'" *Id.* at 938 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The Sixth Circuit's "precedent is clear that neglecting a prisoner's medical need and interrupting a prescribed plan of treatment can constitute a constitutional violation." *Id.* at 947-48. However, the plaintiff must establish the liability of each individual defendant by that person's own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). And the plaintiff has not pointed to any evidence in the record to suggest that any of the named individual defendants were in any way involved with the alleged deprivation of his medication. That failure to establish individual participation in the alleged violations is dispositive of all the claims against the individual defendants on this theory of recovery.

The deliberate indifference claim against the County stands on a somewhat different footing. "[A] municipality cannot be held liable under § 1983 simply because one of its employees violated the plaintiff's constitutional rights." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017)). "In order to impose § 1983 liability on a municipality, the plaintiff must prove that the constitutional deprivation occurred as a result of an official custom or policy of the

municipality." *Ibid.* (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978)).

It is well accepted that "[t]here must be a constitutional violation for a § 1983 claim against a municipality to succeed — if the plaintiff has suffered no constitutional injury, his *Monell* claim fails." *North v. Cuyahoga County*, No. 17-3964, 2018 WL 5794472, at *6 (6th Cir. Nov. 5, 2018) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). However, "[w]hether and under what circumstances a municipality can be liable when the plaintiff suffered a constitutional violation but cannot attribute it to any individual defendant's unconstitutional conduct is a more complicated question — one that [the Sixth Circuit] recently noted in *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018))." *Ibid.* There is language in appellate decisions suggesting that there can be no municipal liability where no individual defendant has violated the plaintiff's constitutional rights. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). That brush, however, paints too broadly. Courts "have interpreted *Heller* to permit municipal liability in certain circumstances where no individual liability is shown." *North*, 2018 WL 5794472, at *7. That might occur, for instance, "when a government actor in good faith follows a faulty municipal policy." *Winkler v. Madison Cty.*, 893 F.3d 877, 900 (6th Cir. 2018) (quoting *Epps v. Lauderdale County*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, C.J., concurring)).

Under that line of authority, if the plaintiff could show that some policy, practice, or custom endorsed by the County led to the deprivation of his medication, then he might be able to pursue a municipal liability claim even in the absence of a verdict attributing the denial of care to any particular named individual defendant. However, even if such a claim could be pursued, in this case it cannot be sustained because the plaintiff has not pointed to anything in the record to suggest that the alleged deprivation of his medication was due to any policy, either expressly endorsed or

implied by widespread practice or custom, that was the moving force for the unlawful deprivation of the medication that had been prescribed for him. The most that the plaintiff has submitted evidence of is that (1) medication was prescribed to treat his seizures while he was in jail; (2) he was deprived of his medication for several unspecified periods, during which he suffered several seizures; and (3) after he sent several medical kites and was seen by a doctor, the doctor ordered the nurse to provide both of his medications, and they were administered to him within an hour. The plaintiff also contends that on one occasion he told a nurse that he needed his medication and she "laughed" and told him that she would provide it when she got around to it; the plaintiff did not testify that on that occasion the medication was not eventually provided. Those incidents, taken alone or together, may establish incompetency or even mendacity by individual county employees. But they do not suffice to show that the County had in effect any express or implied policy, custom, or practice of not supplying prescribed medication to meet inmates' needs.

As the Sixth Circuit observed in the *North* case, allegations of variations and delays in the handling of medical complaints and treatment do not suffice to establish that a municipal entity has a policy of failing or refusing adequately to meet the serious medical needs of its inmates. *North*, 2018 WL 5794472 at *8. As the panel concluded there, such variations and isolated failures or delays in delivery of care amount to "'one or two missteps' rather than the kind of widespread, gross deficiencies that would support a finding of deliberate indifference." *Id.* at *9 (quoting *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016)).

The plaintiff's deliberate indifference claim based on deprivation of medication must be dismissed.

### B. Excessive Force

The plaintiff has brought his excessive force claim under the Fourth, Eighth, and Fourteenth Amendments. Each of those applies in different circumstances. *Hopper v. Phil Plummer*, 887 F.3d 744, 751 (6th Cir. 2018). "While the Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons." *Ibid.* (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)). "When an individual does not clearly fall within either category, the Fourteenth Amendment's Due Process Clause prohibits a governmental official's excessive use of force." *Ibid.* (citing *Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002)).

The plaintiff plainly was a convicted inmate serving a criminal sentence. Therefore, his claim is governed by the Eighth Amendment. *See Richmond*, 885 F.3d at 937. "[T]he Eighth Amendment . . . forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)). But "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quotations omitted).

### 1. Hoover and Broecker

The plaintiffs' claims against defendants Hoover and Broecker must be dismissed because he has not offered any evidence of — or even alleged — any unconstitutional conduct by them. The plaintiff asserts that Deputy Hoover did nothing more than call a "Code Green," and the uncontradicted evidence in the record does not show that Hoover did anything after that beyond

waiting for backup to arrive, then sitting back down at his desk. At oral argument, plaintiff's counsel conceded that Hoover never laid hands on the plaintiff. But he said that Hoover was responsible for setting in motion the events that led to the assault on the plaintiff by the other deputies. Liability based on such a theory might be conceivable if there were evidence that Hoover's compatriots were lying in wait, spring-loaded to administer physical force the moment that Code Green was invoked. But there is no such evidence here. And the plaintiff has not cited any legal authority for the proposition that calling for help — even unreasonably sounding the alarm — constitutes any cognizable violation of the Eighth Amendment under clearly established federal law.

Similarly, the record suggests at most that Lieutenant Broecker merely put handcuffs on the plaintiff when she arrived, and nothing more. The plaintiff has not cited any law suggesting that handcuffing a prisoner, with no aggravating employment of unnecessary force, can constitute an Eighth Amendment violation. And there is no evidence that Broecker handcuffed the plaintiff with the intention of incapacitating him to allow Leonowicz and Kennamer an unencumbered opportunity to beat him.

Hoover also argues that he was not properly served with process in this case. However, there is no need to address that ground, because the evidence does not support a claim against him.

The case will be dismissed as to defendants Hoover and Broecker.

### 2. Leonowicz and Kennamer

The excessive force claims against defendants Leonowicz and Kennamer, however, must be resolved at trial. The defendants contend that the plaintiff could not definitively identify any of them at his deposition. And it is axiomatic that the plaintiff must prove the personal liability of each named defendant by proof of their own individual wrongful conduct in order to prevail in a

1983 case. *Iqbal*, 556 U.S. at 676. But there is enough evidence in the record to permit a jury to conclude that Leonowicz and Kennamer each engaged in acts that violated the plaintiff's Eighth Amendment rights.

The plaintiff testified that one of the officers used OC spray on him without provocation, while he was compliant and unresisting, merely in response to his statement that he "didn't do anything." It was recorded in the reports of three involved officers and corroborated by the deposition testimony of Leonowicz and Kennamer that the person who used the OC spray was in fact Leonowicz.

It has been well settled law in this circuit for quite some time that a prison guard who maces an unresisting, handcuffed prisoner without provocation, not in response to any plausible disciplinary exigency, commits an unreasonable use of force and is not entitled to qualified immunity. The Sixth Circuit has "long recognized that a spontaneous assault by a prison guard on an inmate is grounds for an Eighth Amendment excessive force claim." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993)). The Court of Appeals repeatedly has held that using mace on an unresisting arrestee or prisoner is unreasonable under any of the applicable use-of-force standards defined by the Eighth, Fourth, or Fourteenth Amendments. *Coley*, 799 F.3d at 540 ("At the time of the incident [in February 2004], pretrial detainees had a clearly established right not to be gratuitously assaulted while fully restrained and subdued.") (applying Fourteenth Amendment standard); *Roberson v. Torres*, 770 F.3d 398, 407 (6th Cir. 2014) ("[U]sing a chemical agent in an initial attempt to wake a sleeping prisoner, without apparent necessity and in the absence of mitigating circumstances, violates clearly established law.") (Eighth Amendment); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004)

("[T]he Officers lay on top of Champion, a mentally retarded individual who had stopped resisting arrest and posed no flight risk, and sprayed him with pepper spray even after he was immobilized by handcuffs and a hobbling device. The use of such force is not objectively reasonable.") (Fourth Amendment); *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994) ("[The defendant] denied spraying mace on plaintiff once he reentered the car and did not state that plaintiff resisted being handcuffed or was violent once he was back inside the car [and, thus] there is no evidence that it was necessary to mace plaintiff once he returned to the car because he was unruly or refused to be handcuffed.") (Fourth Amendment); *Foos v. City of Delaware*, 492 F. App'x 582, 591 (6th Cir. 2012) ("'[C]ontinuing to beat a neutralized suspect constitutes an unconstitutionally excessive use of force, as does continuing to spray mace on a suspect who has already been blinded and incapacitated.'" (quoting *Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006)) (Fourth Amendment). On similar facts, the Eighth Circuit readily concluded that a prison guard used unreasonably excessive force by macing an unresisting prison inmate. *Johnson v. Blaukat*, 453 F.3d 1108, 1112-13 (8th Cir. 2006) (citations omitted).

It is true that the Sixth Circuit has held that there is no "Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying orders," and in "numerous . . . cases [has] concluded that the use of chemical agents against recalcitrant prisoners did not violate the Eighth Amendment." *Roberson*, 770 F.3d at 406 (citing *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)) (quotations omitted). And Leonowicz contends that he administered the OC spray before the plaintiff was handcuffed. However, the plaintiff insists that the opposite is true, and that is the version that controls here. Although the qualified immunity defense may be raised at any stage of the case, when it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified

immunity analysis. *Scott v. Harris*, 550 U.S. 378, 380 (2007). That means that the court must view the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott*, 550 U.S. at 378.

Applying the plaintiff's version of the facts, it clearly established that the unprovoked use of pepper spray on a prisoner who is not causing any disturbance, with no disciplinary justification, and merely in response to a question posed to a guard, is a constitutional violation. *Roberson*, 770 F.3d. at 407 ("[I]n [*Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011)], we held that the prisoner stated an Eighth Amendment claim for excessive use of force when an officer allegedly sprayed him with a chemical agent after he asked why he needed to pack up his belongings.").

The claims against Sergeant Kennamer are a much closer call. Nothing in the record suggests that Kennamer was the officer who applied the OC spray; it appears to be undisputed that Leonowicz did that. However, the plaintiff also alleges that he was shoved and slammed against walls and doors while he was being "escorted" to solitary confinement. It is easy to understand why, under the circumstances, the plaintiff could not clearly identify who shoved and slammed him into those walls and doors after he was sprayed with mace, because temporary blindness is one of the expected incapacitating effects of such sprays. *See Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) ("[T]he effects of mace . . . usually [are] blinding and incapacitating."). However, Kennamer admitted that both he and Leonowicz were present during the escort. And the plaintiff clearly testified that one or more officers unreasonably beat him while he was being moved from one area to the other.

The fact that the plaintiff cannot definitively say which of the two officers shoved or slammed him into walls and doors is problematic because, as noted above, he must establish the

individual liability of each named defendant under section 1983. As the Sixth Circuit has explained, the plaintiff's inability either categorically or by process of elimination to link a particular individual who was present with any unlawful use of force against the plaintiff will be dispositive of that officer's liability. *Totman v. Louisville Jefferson County*, 391 F. App'x 454, 464 (6th Cir. 2010). It may be imagined that one of the defendants could be held liable on a direct use of force theory and the other on the theory that he failed to intervene, but that result is not legally sound where the plaintiff has failed to identify individually any officer who actually used unconstitutional force in the presence of other officers who failed to prevent it. *Harper v. Albert*, 400 F.3d 1052, 1066 (7th Cir. 2005) ("Harper has failed to identify any particular guard, either in his pleadings or through the evidence submitted to the jury at any point during the trial, that used excessive force against him during his transfer. Thus, absent any evidence or even an allegation which could establish a constitutionally cognizable claim for excessive force against any of the defendants (e.g., identification of the individual guard(s) who used excessive force against him during the transfer procedure) Harper cannot possibly establish bystander liability as to Townley or anyone else for failure to intervene, and his claim must fail.").

This case does not mirror the facts in *Harper*, however. According to the plaintiff, only two officers escorted him to the segregation cell and he was beaten by at least one of them. He could not say which one because he was blinded by chemical spray. Certainly, both defendants cannot be held jointly liable merely on the theory that both were present and either one or the other must have committed the abuse. *See Fillmore v. Page*, 358 F.3d 496, 507 (7th Cir. 2004) ("Joint liability is appropriate only where *all* of the defendants have committed the negligent or otherwise illegal act, and so only causation is at issue." (emphasis added)). But "[t]his does not . . . mean

that prison guards who take the trouble to disguise themselves beyond recognition are free to abuse inmates without fear of liability." *Ibid.*

"[I]f [the] incident [of excessive force] is found to have taken place, then [the plaintiff] may proceed against *any defendants who the court finds were present at the scene* for their failure to intervene." *Id.* at 508 (emphasis added). Although this result is in some tension with *Totman* and *Harper*, it also is in harmony because here the perpetrators are not wholly unidentified; and they have been reduced by their own record admissions to a discrete pair of known individuals who freely admit that they both were present when the allegedly excessive force (slamming the plaintiffs head, shoulders, and chest into doors and walls) was deployed. The Sixth Circuit has held "that a police officer who fails to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Thus, we may imagine three logically consistent and legally sound findings by the jury: (1) neither defendant used excessive force and therefore neither is liable; (2) both of them used excessive force, and therefore both are liable; or (3) one of them used excessive force while the other stood by and watched, doing nothing to prevent it. In any of those scenarios, both defendants indisputably were present, and both had the opportunity to intervene as they forced the plaintiff down the treacherous path to the segregation cell. On either of the latter two premises, both could he held liable under section 1983, and in both eventualities the requisite individual liability would be established.

The plaintiff is entitled to present his case to the jury and let them choose among those alternatives. The motion for summary judgment will be denied as to the excessive force claims against defendant Kennamer and Leonowicz.

### 3. Municipal Liability

Regardless of which individual officers may be held liable, the plaintiff has failed to present sufficient evidence to establish municipal liability based on either an implicit policy of misusing OC spray or a failure to train officers in the use of it. Instead, all he has shown, at most, is one or two instances of allegedly excessive force that he has not connected to any systemic policy or custom or any failed training regimen. It is difficult to discern the exact basis of the plaintiff's claim here because his argument on the topic is undeveloped. However, the only apparent premises for it are either (1) an implied "custom" of ignoring the County's use of force policy, or (2) a failure properly to train corrections officers in the appropriate use of OC spray. The claim fails on either theory.

As noted, a plaintiff asserting liability under section 1983 against a municipality must show direct, not vicarious, liability. The constitutional violation must flow from "a municipal policy or custom." *Burgess*, 735 F.3d at 478 (citing *Monell*, 436 U.S. at 694). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Ibid.*

The only possible options for the plaintiff here are the third or fourth. To show that a municipal defendant followed a custom of tacit inaction or tolerance of unconstitutional policy violations, the plaintiff must demonstrate "(1) a clear and persistent pattern of unconstitutional

conduct by [the defendant's] employees; (2) the municipality's notice or constructive notice of the unconstitutional conduct; (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the policy of inaction was the moving force of the constitutional deprivation." *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018) (quotations omitted). In this case the tacit endorsement claim fails because, even if two incidents of unlawful force were sufficient to establish a pattern, the plaintiff has not pointed to any evidence suggesting that the County had knowledge of those violations and choose deliberately to ignore them.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, to prevail on a failure to train theory, the plaintiff must demonstrate either (1) "a pattern of similar constitutional violations by untrained employees and [the defendant municipality's] continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees, thus establishing the conscious disregard for the consequences of its action . . . necessary to trigger municipal liability," or (2) "a single violation of federal rights, accompanied by a showing that [the defendant] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins County, Kentucky*, 805 F.3d 724, 738-39 (6th Cir. 2015) (citations, quotations, and alterations omitted).

In this case, the plaintiff has not made the required showing that the County persisted in a course of inadequate training that it knew or should have known was likely to lead to constitutional violations; in fact, he points to the policy in place governing use of OC spray as exemplary and argues that the alleged abuses were *violations* of that policy. But he has not pointed to any

evidence to illustrate either how any training received by the defendants about that policy or the use of OC spray in the jail setting was inadequate, or that the County had reason to know that any deficient training regimen was likely to precipitate constitutional abuses. Because the plaintiff has not demonstrated either a "'pattern of similar constitutional violations,' [or] that a violation is a 'highly predictable consequence' of the [County's] alleged failure to train," his putative failure to train claim must fail. *Meeks v. City of Detroit, Michigan*, 727 F. App'x 171, 182 (6th Cir. 2018) (quoting *Shadrick*, 805 F.3d at 738-39) (rejecting failure to train claim premised on two other allegedly improper uses of photographic lineups besides the one at issue in the plaintiff's case and an expired consent judgment relating to eyewitness ID procedures); *Burgess*, 735 F.3d at 478 ("A failure-to-train claim . . . requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." (quotations omitted)).

Because the plaintiff has failed to present sufficient evidence to sustain his municipal liability claim on any colorable theory, the Court will grant the motion for summary judgment and dismiss the *Monell* claim against the County.

### C. Remaining Claims

The plaintiff also brought a claim that he is entitled "*Res Ipsa Loquitur.*" However, he made no reference to it in his responsive briefing. "Claims left to stand undefended against a motion to dismiss are deemed abandoned." *Mekani v. Homecomings Fin., LLC,* 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to a motion to dismiss a claim, "the Court assumes he concedes this point and abandons the claim"). Moreover, the plaintiff has not cited any legal authority suggesting that the concept has any application in an action under 42 U.S.C. § 1983, where there are no extant state law claims.

The plaintiff's claim brought under the Fourteenth Amendment ("Fourth Claim for Relief") will be dismissed because, as noted earlier, it now is undisputed that the plaintiff was incarcerated on a jail sentence after conviction for two misdemeanors, and it therefore is the Eighth Amendment, not the Fourteenth, which governs his claims. *Hopper*, 887 F.3d at 751.

### III. Conclusion

Fact issues preclude summary judgment in favor of defendants Kennamer and Leonowicz on the claims against them for use of excessive force in violation of the Eighth Amendment. However, the plaintiff has not come forward with evidence to sustain his claims against any of the other defendants on any of the other legal theories he has advanced in the amended complaint. The motion by David Hoover styled as a motion to amend or correct the case caption, based on improper service of process, will be dismissed as moot.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants Broecker, Kennamer, Leonowicz, and Genesee County (ECF No. 47) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the motion for summary judgment by defendant David Hoover (ECF No. 72) is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE, except** the First Claim for Relief as to defendants Kennamer and Leonowicz **only**.

It is further **ORDERED** that the motion by David Hoover styled as a motion to amend or correct the case caption (ECF No. 44) is **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   December 21, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 21, 2018.

s/Kim Grimes
KIM GRIMES